## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| **PACE INDUSTRY UNION-MANAGEMENT PENSION FUND and its TRUSTEES: STAN JOHNSON, GARY BEEVERS, JOHN GEENEN, JAMES KIDDER, RON HACKNEY, DALE OLSON, TIM SUDELA, and LISA SILVERMAN,** | ) ) ) ) ) ) ) |  |
|  | ) |  |
| **Plaintiffs,** | ) | **No. 3:10-cv-00350** |
|  | ) | **Judge Nixon** |
| **v.** | ) | **Magistrate Judge Knowles** |
|  | ) |  |
| **TROY RUBBER ENGRAVING COMPANY,** | ) |  |
|  | ) |  |
| **Defendant.** | ) |  |

## <u>ORDER</u>

Pending before the Court is Plaintiffs PACE Industry Union-Management Pension Fund and its Trustees (collectively, "Plaintiffs") Motion for Summary Judgment ("Plaintiffs' Motion") (Doc. No. 28), which was filed along with a Statement of Undisputed Fact (Doc. No. 29) and a supportive Memorandum (Doc. No. 32). Also pending is Defendant Troy Rubber Engraving Company's ("Defendant") Cross-Motion for Summary Judgment ("Defendant's Motion") (Doc. No. 35), which was filed with a Statement of Facts (Doc. No. 35-3) and a supportive Memorandum (Doc. No. 36). Defendant filed a Response to Plaintiffs' Statement of Undisputed Fact (Doc. No. 37), and Plaintiffs filed a Memorandum in Opposition to Defendant's Motion (Doc. No. 41) and a Response to Defendant's Statement of Facts (Doc. No. 42).

For the reasons stated below, Plaintiffs' Motion is **GRANTED in part** and Defendant's Motion is **DENIED**.

# I. BACKGROUND

### a. Factual Background[1]

Under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.*, PACE Industry Union-Management Pension Fund ("the Fund") is a multiemployer pension plan as defined in § 1002(37)(A), and the Fund's Trustees are its fiduciaries as defined in § 1002(21). The Fund is administered in Nashville, Tennessee. Defendant is a corporation organized under the laws of the State of New Jersey, and Defendant's primary place of business is also in New Jersey. This action is brought under provisions of ERISA, 29 U.S.C. § 1132, and the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, and in it Plaintiffs seek to recover contributions that they allege Defendant owes (and has not timely paid) to the Fund.

Defendant entered into one or more Collective Bargaining Agreements (CBAs) with Local 1-107 of PACE International Union, pursuant to which Defendant was to contribute to the Fund on behalf of its employees who were covered by the CBAs. Defendant was also a signatory to Standard Forms of Agreement for Participation in the Fund ("Participation Agreements"). The most recent Participation Agreement was dated April 1, 2002, and stated that Defendant was bound by the terms and provisions of the Fund's Amended and Restated Agreement and Declaration of Trust ("Trust Agreement") and any amendments to it. (Doc. No. 30-4 at 3.) The Participation Agreements, Trust Agreement, and amendments contain a variety of provisions dictating relations between Plaintiffs and Defendant, including provisions regarding Defendant's potential withdrawal from participation in the Fund and any liability to the Fund created by the withdrawal. The most recent amendment required that any dispute regarding withdrawal liability must be resolved in arbitration initiated and conducted in

---

[1] All facts are drawn from Defendant's Response to Plaintiffs' Statement of Undisputed Fact (Doc. No. 37) and Plaintiffs' Response to Defendant's Statement of Facts (Doc. No. 42) unless otherwise noted.

accordance with Pension Benefit Guaranty Corporation ("PBGC") regulations codified at 29 C.F.R. Pt. 4221. Among other things, these provisions include requirements that the employer must provide a notice of arbitration and statement disputing withdrawal liability to the plan sponsor (along with the demand for withdrawal liability, a copy of the request for review, and any response), and that the parties must select an arbitrator and notify him or her of being selected. 29 C.F.R. §§ 4221.3(d), 4221.4(a).

At some time in 2002, Defendant and Local 1-107 came to an agreement that Defendant would be allowed to withdraw from the CBA in place at the time because the company was downsizing, moving to a smaller building, and laying off all of its union employees. Because of the agreement, Defendant made its last payment to the Fund by a check dated October 31, 2002, and made no further payments. This effected a "complete withdrawal" from the Fund as defined by § 1383. Defendant asserts that its operations and income have shrunk considerably since 2002.

In a letter dated July 13, 2009, Plaintiffs notified Defendant that its complete withdrawal had triggered withdrawal liability to the Fund pursuant to § 1381(b). Plaintiffs calculated Defendant's total liability to be $216,775.00, payable in 240 monthly installments of $1,170.43 starting on October 1, 2009. Plaintiffs sent a second notice to Defendant on October 21, 2009, notifying Defendant that the first payment had not been received. Further, the letter stated that Defendant's failure to make the payment within sixty days of the receipt of this second letter would result, pursuant to § 1399(c)(5), in the entire withdrawal liability amount coming due. Pursuant to ERISA and the agreements between the parties, Plaintiffs also indicated they would be seeking interest on the missed payments and attorneys' fees in addition to the outstanding delinquency.

Defendant did not make the requested payments. It did, however, submit a letter to Plaintiffs, dated August 7, 2009, in which it requested review of Plaintiffs' liability assessment pursuant to § 1399(b)(2)(A). The letter emphasized that certain information regarding the liability calculation had not been provided to Defendant, that the resulting calculation might not be correct, and that Plaintiffs should provide Defendant with the information in question so Defendant could perform its own review. (Doc. No. 30-5.) Those reasons, listed under the heading "Request for Review," were as follows:

> a. You have provided no information with regard to the actuarial assumption for your withdrawal liability. As a consequence, we believe that the interest assumptions are incorrect and should not be utilized.

> b. The withdrawal calculation may incorrectly apply to wrong dates since Troy Rubber Engraving Co. withdrew in either 2001 or 2002. Fund calculations using earlier years' withdrawal liabilities are incorrect.

> c. No interest rate information is incorporated into the payment schedule.

> d. You have not explained why you waited until 2009 when the Employer's withdrawal appears to have occurred in either 2001 or 2002.

(*Id.*) Plaintiffs, however, challenged the sufficiency of the request for review under § 1399(b)(2)(A) in a letter dated November 10, 2009, on the basis that Defendant's request only expressed general disagreement with the calculation and did not identify a specific inaccuracy. The letter did not purport to constitute a review of the liability assessment, but it did provide some information Defendant requested regarding the bases of the calculation, which Plaintiffs aver more than satisfied their obligations under ERISA.

Defendant instituted arbitration on October 28, 2009, before the New Jersey State Board of Mediation ("the Board") regarding the withdrawal liability assessment, about which Plaintiffs received a notice directly from the Board dated November 6, 2009. The Notice simply states that the dispute is in regards to "Management Pension Fund" and provides Plaintiffs a list of

prospective arbitrators from which to make strikes in order for the Board to designate an arbitrator acceptable to the parties. (Doc. No. 30-6.) Subsequently, however, Plaintiffs sent Defendant a letter dated December 23, 2009, indicating that, pursuant to the Trust Agreement, arbitration must be initiated in accordance with the PBGC regulations, not before the Board. Further, the December 23 letter stated Plaintiffs' position that arbitration was inappropriate at that juncture because there must have been a proper request for review prior to the initiation of arbitration. No further steps were taken in the arbitration before the Board.

### b. *Procedural Background*

Plaintiffs filed this action on April 6, 2010 (Doc. No. 1), and it was initially assigned to Senior Judge Robert Echols, who transferred the case to the undersigned on July 30, 2010 (Doc. No. 27).

Plaintiffs filed their Motion for Summary Judgment on November 15, 2010 (Doc. No. 28), along with a Statement of Undisputed Fact (Doc. No. 29), various supportive affidavits and documentation (Doc. Nos. 30 & 31), and a Memorandum in Support (Doc. No. 32). In an Order dated November 16, 2010, Magistrate Judge Knowles granted Defendant extra time to file a cross-motion for summary judgment (Doc. No. 34), and Defendant's Motion was filed on December 15, 2010 (Doc. No. 35). Defendant also filed a Memorandum in Support (Doc. No. 36), a Response to Plaintiffs' Statement of Undisputed Fact (Doc. No. 37), supportive declarations (Doc. Nos. 38 & 39), and Defendant's own Statement of Facts (Doc. No. 40). Finally, Plaintiffs filed their Response in Opposition to Defendant's Motion on January 6, 2011 (Doc. No. 41), as well as a Response to Defendant's Statement of Facts (Doc. No. 42).

Trial in this case was continued by an Order of this Court on June 6, 2011, pending the resolution of Plaintiffs' and Defendant's Motions. (Doc. No. 50.)

## II. LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides in part that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  The general thrust of the inquiry a court must perform in considering a motion for summary judgment is whether there is a need for trial, in that genuinely disputed factual matters must be put to the fact-finder because they might reasonably be resolved in either party's favor.  *Anderson v. Liberty Lobby, Inc.*, 47 U.S. 242, 250 (1986).  "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Id*. at 247-48.   The substantive law involved in the case will underscore which facts are material, and only disputes over outcome-determinative facts will bar a grant of summary judgment.  *Id.* at 248.

Parties must support their allegations as to the existence or absence of a genuine dispute as to any material fact: Rule 56(c)(1)(A) allows parties to support their claims by citing to materials in the record; Rule 56(c)(1)(B) allows them to support their claims by showing that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support that fact."  While the moving party bears the initial burden of proof for its motion, the party that opposes the motion has the burden to come forth with sufficient proof to support its claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

In ruling on a motion for summary judgment, the court must review the facts and reasonable inferences to be drawn from those facts in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Further, the

Court will closely scrutinize the movant's papers while indulgently treating those of the opponent. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir. 1962) (citations omitted).

### III. ANALYSIS

#### A. ERISA and the MPPAA

To resolve the claims before the Court, the statutory scheme underlying these claims must first be described. ERISA was enacted in 1974 in order to ensure that employees who were promised pension benefits would indeed receive those benefits on retirement. *Mason & Dixon Tank Lines, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund*, 852 F.2d 156, 158 (6th Cir. 1988). ERISA was amended in 1980 by the Multiemployer Pension Plan Amendments Act (MPPAA), 29 U.S.C. §§ 1381-1461, which responded to the problem of employers withdrawing from multiemployer pension plans when diminishing overall participation forced remaining employers to contribute at a higher level in order to meet the funds' past liabilities. *Mason & Dixon Tank Lines*, 852 F.2d at 158. To combat this problem, "[t]he MPPAA requires employers who withdraw, completely or partially, from a multiemployer pension plan to contribute to the plan a proportionate share of the unfunded, vested benefits." *Id.*

Relevant to this case, "complete withdrawal" is "when an employer (1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan." § 1383(a). When complete withdrawal occurs, the plan sponsor must "(1) determine the amount of the employer's withdrawal liability, (2) notify the employer of the amount of the withdrawal liability, and (3) collect the amount of the withdrawal liability from the employer." § 1382. The plan sponsor must, "as soon as practicable after an employer's

complete . . . withdrawal," notify the employer of the amount of liability and the schedule of payments, and also make a demand for payment pursuant to the schedule. § 1399(b)(1).

After receiving notice of withdrawal liability, § 1399(b)(2)(A) affords the employer ninety days within which to (i) request that the plan sponsor review "any specific matter" regarding the liability and payment schedule determination, (ii) "identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to the employer," and (iii) provide the plan sponsor additional information. If there is "any dispute . . . concerning a determination made under sections 1381 through 1399 of this title," either party may initiate arbitration "within a 60-day period after the earlier of (A) the date of notification [of the plan sponsor's response to the request for review] . . . , or (B) 120 days after the date of the employer's request [for review]." § 1401(a)(1). Alternatively, the parties may jointly initiate arbitration within 180 days of the initial demand for payment. *Id.* These provisions set up a system in which "[arbitration] is the preferred method of dispute resolution . . . and normally the initial step preceding judicial intervention." *Mason & Dixon Tank Lines*, 852 F.2d at 163. Interim payments must be made during the pendency of any such dispute, § 1399(c)(2), and if arbitration is not initiated, then the liability amount is "due and owing" pursuant to the schedule determined by the plan sponsor and may be collected by an action in a court of competent jurisdiction, § 1401(b)(1). The employer's failure to make a payment when due, and further failure to cure that delinquency, constitutes "default," and entitles the plan sponsor to the full and immediate payment of the outstanding amount of withdrawal liability. § 1399(c)(5).

### B. The Pending Motions

The bases of Plaintiffs' Motion are essentially as follows. Plaintiffs assert, as a preliminary matter, that Defendant owes the Fund withdrawal liability in the amount of

$216,775.00 because of Defendant's complete withdrawal from the Fund in 2002, subsequent to which Defendant made no further payments to the Fund. (Doc. No. 32 at 8-9.) Plaintiffs then argue that Defendant failed to make a proper request for review under § 1399(b)(2)(A) in its August 7, 2009 letter, because the letter failed to assert a specific matter for review. (Doc. No. 32 at 9-10.) Next, Plaintiffs argue that even if the request for review was proper, Troy failed to properly seek arbitration of any dispute regarding its withdrawal liability, as is required by § 1399(b)(2)(A). (*Id.* at 11-13.) Because Defendant failed to make payments pursuant to the schedule provided in the Fund's notice of withdrawal liability, Plaintiffs argue that Defendant is in default pursuant to § 1399(c)(5) and thus liable for the entire amount of withdrawal liability calculated. (*Id.* at 13-14.) Further, Plaintiffs claim entitlement to liquidated damages, interest, attorneys' fees and costs pursuant to § 1132(g)(2), in amounts set forth in the agreements between the parties. (*Id.* at 14-15.) Finally, Plaintiffs argue that Defendant has no defenses that bar their claim, in particular, that there has been no violation of the statute of limitations to bring an action under ERISA, and that the defense of laches has been waived by the failure to arbitrate and is otherwise invalid on its merits. (*Id.* at 15-18.)

Defendant also claims entitlement to summary judgment. First, Defendant argues that Plaintiffs failed to provide notice of withdrawal liability until seven years after the withdrawal occurred, in violation of § 1399(b)(1)'s requirement that a plan provide such notice "as soon as practicable" after withdrawal. (Doc. No. 36 at 2-3.) Defendant also asserts the doctrine of laches as a bar to its liability. (*Id.* at 3-5.) Alternatively, Defendant claims that it is entitled to summary judgment because Plaintiffs refused to provide a requested review of the liability determination, allegedly in violation of § 1399(b)(2)(A). Lastly, Defendant claims entitlement to

summary judgment on the grounds that Plaintiffs refused to participate in the arbitration process Defendant initiated, also allegedly in violation of § 1401(a).

"[T]o prevail on a collection claim, the Fund must show that: (1) 'the Fund was a multiemployer pension plan . . . and the Defendants were an employer for the purposes of ERISA,' (2) 'the Fund notified the Defendants of their assessed liability,' and (3) 'Defendants failed to timely initiate arbitration.'" *Hancock v. Cook Cnty. Waste & Recycling, Inc.*, No. 09-cv-212, 2011 WL 1416978, at *7 (N.D. Ill. April 5, 2010) (quoting *Chicago Truck Drivers v. El Paso CGP Co.,* 525 F.3d 591, 598 (7th Cir. 2008)). For the purpose of resolving the cross motions for summary judgment, neither party in this case contests that Defendant (an employer) completely withdrew from the Fund (a multiemployer pension plan), that the Fund provided and Defendant received notice of its liability and a demand for payment, or that arbitration never ultimately took place to contest the Fund's liability assessment. Nor is it disputed that Defendant has not paid the liability. Thus, on the facts described above alone, Plaintiffs are arguably entitled to collect the entire withdrawal liability amount they assessed against Defendant and that has now gone into default. What the Court must assess in Parts III.C and D, *infra*, however, is whether the parties properly arrived at this point in light of Defendant's purported request for review and attempt to arbitrate, and whether Defendant may raise defenses pertaining to the timing of Plaintiffs' notice of liability and demand for payment.

### C. Defendant's Liability to Plaintiffs

As stated above, Plaintiffs may be entitled to collect the full withdrawal liability amount pursuant to § 1401(b)(1) on the undisputed facts. Defendant contests not the liability amount itself, but whether the amount has properly come due in light of the Fund's alleged failure to respond to Defendant's request for review and refusal to arbitrate in the forum Defendant

selected. Plaintiffs maintain that no request for review occurred, and that even if it did, Defendant's failure to initiate arbitration before the PBGC nonetheless resulted in the liability amount coming due. The Court will first address the request for review, and then the matter of arbitration.

### 1. Defendant's Request for Review

As described in Part III.A, *supra*, once Defendant received notice of withdrawal liability and demand for payment in July of 2009, it was entitled to request review of "any specific matter" regarding these determinations within ninety days pursuant to § 1399(b)(2)(A)(i). In its August 7, 2009 letter responding to the Fund's notice and demand for payment, Defendant's counsel stated that Defendant "request[ed] review of the assessment for the reasons noted below and also request[ed] additional information necessary to identify any other inaccuracies in the assessment." (Doc. No. 30-5 at 2.) Those reasons have been detailed above. *See* Part II.A, *supra*. Then, counsel listed several pieces of additional information necessary for Defendant to review the demand—such as annual actuarial reports used in the calculation, the Plan Document, Trustee minutes, information regarding other employer withdrawals from the Fund—and "reserve[d] the right to request a review of the Demand on any other basis." (Doc. No. 30-5 at 3.) Plaintiffs argue that this request for review was not proper and barred Defendant from challenging Plaintiffs' assessment of withdrawal liability in arbitration; in their response to the request for review, Plaintiffs stated as much, but directed Defendant to some information on which the liability assessment was based. Defendant argues that the request was adequate, and that Defendant is entitled to judgment because Plaintiffs failed to review the decision and to provide Defendant with the information it requested.

Plaintiffs' argument is based on the language of § 1399(b)(2)(A) and on one case,

*National Pension Plan of the UNITE HERE Workers Pension Fund v. Westchester Lace &*

*Textiles, Inc.* (*Westchester Lace*), No. 05 Civ. 6138(RPP), 2006 WL 2051107 (S.D.N.Y. July 21,

2006). Section 1399(b)(2)(A) enables an employer to request review of "any specific matter"

relating to the plan sponsor's withdrawal liability assessment and payment schedule, and

Plaintiff asserts that Defendant's request was not sufficiently specific. (Doc. No. 32 at 10.) In

*Westchester Lace*, a court in the Southern District of New York explained that "[m]erely stating

that the employer disagrees with the liability assessment 'does not comply with any of the

statutory provisions for contesting liability and tolling the statute of limitations,'" 2006 WL

2051107, at *8 (quoting *I.A.M. Nat'l Pension Fund, Plan A, A Benefits v. Slyman Indus., Inc.*,

CIV. A. No. 87-847, 1988 WL 60342, at *2 (D.D.C. May 31, 1988)). Ultimately, the court

declined to vacate an arbitrator's determination that the defendant had failed to make a request

for review under § 1399(b)(2)(A) and thus failed to toll the period of time in which defendant

could seek arbitration, resulting in the initiation of arbitration outside of the allotted statutory

timeframe. 2006 WL 2051107, at *8. This Court notes that a different judge in the same district

court asserted this principle regarding the failure to request review more recently, stating,

> To invoke either of the unilateral routes to arbitration, [Defendant] was first required to
> ask the Plan to review its liability. The statute gives an employer only 90 days to make
> such a request, so [Defendant] had to request a review by August 17, 2008. It did not do
> so. By failing to request review on or before August 17, [Defendant] forfeited its right to
> commence an arbitration unilaterally—and with it, the right to contest the amount owed
> or the adequacy of the notice.

*Amalgamated Lithographers of Am. v. Unz & Co. Inc.*, 670 F. Supp. 2d 214, 226 (S.D.N.Y.

2009); *see also Trs. of Bldg. Laborers' Local 310 Pension Fund v. Able Contracting Grp., Inc.*,

No. 1:06 CV 1925, 2008 WL 3889997, at *2 (N.D. Ohio Aug. 19, 2008).

The language of § 1401(a), however, does not bar either party from initiating arbitration regarding the withdrawal liability assessment where a purported request for review has been made, and there is a dispute over the sufficiency of that request. While §§ 1399 and 1401 clearly contemplate the request for review as a predicate to arbitration, § 1401(a)(1)(B) allows either party to initiate arbitration after the employer's request for review. Additionally, § 1401(a)(1) specifically states that "[a]ny dispute . . . concerning a determination made under sections 1381 through 1399 of this title *shall be resolved through arbitration*." It is § 1399, of course, that allows the employer to request review of the withdrawal liability assessment and provides for the plan sponsor to make a response. Because determinations under § 1399 are the subject matter of § 1401's arbitration mandate, concerns about the sufficiency of the request for review (as part of the withdrawal liability determination process) can and should be addressed in the context of arbitration. Indeed, it is worth noting that this is what appears to have occurred in *Westchester Lace*, the case Plaintiffs cite for the proposition that this Court should find that Defendant's inadequate request for review barred Defendant from initiating arbitration. The *Westchester Lace* court was reviewing an arbitrator's finding regarding the request for review, not making the finding in the first instance, and was not approaching that issue as a basis for summary judgment.

In the view of this Court, therefore, the adequacy of Defendant's request was a proper matter for arbitration, but is not a basis in itself for judgment in the instant forum. After all, it is not disputed that Defendant sent a letter purporting to be a request for review to the Plan; this is not an instance in which the employer never made a request of any sort. Further, Defendant could, and did, attempt to proceed to arbitration as provided for by § 1401, where the sufficiency of the request for review might have been contested and adjudicated. Because the sufficiency of

the request for review is a proper subject for arbitration, the Court declines to determine the issue itself as a basis for judgment in Plaintiffs' favor.

Defendant's argument that it is entitled to summary judgment because of Plaintiffs' allegedly inadequate response to the purported request for review fails. Defendant has not cited any authority that supports the Court's awarding of judgment to the employer when the plan sponsor fails to respond to a request for review. Defendant has identified one case that concludes that Congress intended to require a plan sponsor to provide information pursuant to an employer's request for review, *John J. Nissen Baking Co. v. New England Teamsters*, 737 F. Supp. 679 (D. Me. 1990). However, the case relies on an ERISA provision, § 1401(e), which has been replaced.[2] Additionally, the district court's decision in *John J. Nissen Baking Co.* pertained to the assertion of the rights formerly contained in § 1401(e) to request an issuance of an injunction requiring a plan sponsor to provide information prior to the request for review and arbitration, not the awarding of judgment to the employer. Defendant here has not sought injunctive relief, and, instead, seeks judgment in its favor after the window for arbitration has long since come and gone.

Further, the reasoning above regarding the sufficiency of Defendant's request for review leads to the same conclusion as to the sufficiency of Plaintiffs' response to that request: arbitration was the proper venue for such a dispute. Section 1401(a)(1)(B) specifically contemplates a plan sponsor's failure to respond and enables the employer to initiate arbitration,

---

[2] Prior to an amendment in 2008, § 1401(e) stated: "If any employer requests in writing that the plan sponsor make available to the employer general information necessary for the employer to compute its withdrawal liability with respect to the plan (other than information which is unique to that employer), the plan sponsor shall furnish the information to the employer without charge. If any employer requests in writing that the plan sponsor make an estimate of such employer's potential withdrawal liability with respect to the plan or to provide information unique to that employer, the plan sponsor may require the employer to pay the reasonable cost of making such estimate or providing such information." Today, the section details special rules and procedures not in issue in this case.

without providing any other form of relief, such as the release from liability Defendant seeks. This section enables the either party to initiate arbitration "within a 60-day period after . . . 120 days after the date of the employer's request [for review]." This creates a 180-day period following the request for review in which the employer may seek arbitration, even if the plan sponsor does not respond to the request because of its alleged insufficiency. Indeed, this is the approach Defendant itself took by seeking to begin an arbitration proceeding before the New Jersey State Board of Mediation.

Other district courts have noted that seeking arbitration is proper when a plan sponsor declines to review its liability assessment because of an allegedly inadequate request for review. A district court within this Circuit has noted that in an instance where plan trustees failed to respond to the allegedly inadequate request for review made by an employer's counsel (a request the court suggested was satisfactory), the employer had 180 days from the date of the request in which to seek arbitration. *Trs. of the Sheet Metal Workers' Local Union No. 80 Pension Trust Fund v. W.G. Heating & Cooling*, 555 F. Supp. 2d 838, 854 (E.D. Mich. 2008) (ultimately holding that time for arbitration was not terminated by plan sponsors' filing of action in federal court, and that failure to initiate arbitration within deadline rendered withdrawal liability "due and owing"). A judge in the Eastern District of New York rejected an employer's argument that the period in which to initiate arbitration had not begun to run due to the plan sponsor's failure to respond to a request for review; he pointed out that "even accepting [the employer's] contention that the Fund's letter of November 10, 1998 was not a proper response to its request for review, subsection (B) would then apply" and arbitration could have been initiated within 180 days of the request for review. *Rao v. Prest Metals*, 149 F. Supp. 2d 1, 10 (E.D.N.Y. 2001) (citing *Cent. States, Se. & Sw. Areas Pension Fund v. Louisville Auto Rail Servs., Inc.*, 67 F. Supp. 2d 933

(N.D. Ill. 1999)).  Although these decisions do not address whether judgment is available to an employer whose request for review is disregarded due to its allegedly insufficiency, what they tend to show is that the MPPAA provides a means for review in such a situation.  The case law does not indicate that being absolved of liability in district court, without first arbitrating the matter, is an acceptable outcome under the statute.

This Court also finds that Defendant had a mode of recourse under the MPPAA when Plaintiffs declined to review the liability assessment—that recourse being to initiate arbitration anyway—but that Defendant has not asserted an adequate basis in the case law or the language and structure of the MPPAA that would entitle it to judgment because of this.  In light of this analysis, the Court cannot grant judgment in favor of either party at this juncture, and must instead move to the issue of Defendant's attempt to initiate arbitration.

### 2.  Initiation of Arbitration

As described in Part III.A, *supra*, there are two possible ways by which an employer and plan sponsor may reach an arbitral forum in which to resolve any disputes about the withdrawal liability assessment and payment schedule.  Either party may unilaterally "initiate" arbitration within sixty days of the receipt of the plan sponsor's findings regarding the employer's request for review or within 180 days after the request for review is made, whichever date comes first. 29 U.S.C. § 1401(a)(1).  The other means by which arbitration may occur is when the parties jointly initiate arbitration within 180 days after the plan sponsor's notice and demand for payment.  *Id.*  Pursuant to § 1401(b)(1), if arbitration is not initiated under § 1401(a), then the liability amount become "due and owing" per the assessment and payment schedule of the plan sponsor.

In this case, the parties did not seek to arbitrate jointly, and instead Defendant attempted to begin a proceeding before the New Jersey State Board of Mediation, to no success. Plaintiffs argue that this attempt was invalid and that Defendant made no other effort to arbitrate in satisfaction of § 1401, while Defendant argues it is entitled to judgment because of Plaintiffs' refusal to arbitrate. It is undisputed that Defendant sought to arbitrate before the Board within the timeframe provided by the MPPAA, and that the Board sent Plaintiffs notice of the arbitration, as well as a list of prospective arbitrators. Plaintiffs allege that these processes did not conform to those alluded to in the Trust Agreement—those approved by the PBGC, which are codified at 29 C.F.R. Pt. 4221. Indeed, the processes set out by the PBGC differ in some ways from the approach Defendant took, including that the employer must provide a notice of arbitration and statement disputing withdrawal liability to the plan sponsor (along with the demand for withdrawal liability, a copy of the request for review, and any response), and that the parties must select an arbitrator and notify him or her of being selected. 29 C.F.R. §§ 4221.3(d), 4221.4(a). Here, the Board provided the notice, which stated only that the dispute pertained to a pension fund, and also provided the list of arbitrators Plaintiffs could make deletions to, but from which the Board would ultimately select and notify the chosen arbitrator. Presumably, there are further distinctions between the processes of the Board and the PBGC, but it is not necessary to provide further illustration: Defendant does not dispute that the procedures approved by the PBGC were required by the Trust Agreement, or that the approach Defendant took did not comply with the PBGC procedures. Defendant argues, instead, that the Board provides "substantially the same forum" as any Plaintiffs might suggest. (Doc. No. 42 at 8.) After Plaintiffs received correspondence from the Board and notified Defendant that the Board was not

the appropriate forum for arbitration, they did not select an arbitrator and Defendant did not pursue arbitration by any other means.

As stated above, arbitration is the usual and preferred method of dispute resolution under the MPPAA.  *See Mason & Dixon Tank Lines*, 852 F.2d at 163-64.  The cases brought to the attention of this Court (and revealed in its own review of the law) indicate that the proper initiation of arbitration is a matter often addressed in the judicial forum, and that courts do not take lightly the failure to properly initiate arbitration—judges have often found ineffective employers' attempts to initiate arbitration when they failed to meet the precise requirements of the MPPAA or of the chosen arbitral forum.  A district court within this Circuit, for example, determined that an employer that did not initiate arbitration within the prescribed deadlines set by § 1401 was not excused from timely doing so (in order to contest its liability) by the plaintiff's intervening and premature filing of an action in federal court, which the defendant claimed "cut off" the right to arbitrate.  *W.G. Heating & Cooling*, 555 F. Supp. 2d at 854-55;  *see also N.Y. Teamsters Pension & Retirement Fund v. McNicholas Trans. Co.*, 848 F.2d 20, 23 (2d Cir. 1988) (affirming district court's finding that request for arbitration made three days after deadline to initiate arbitration was not timely and thus withdrawal liability became fixed due to failure to initiate arbitration); *Robbins v. B & B Lines, Inc.*, 830 F.2d 648, 651 (7th Cir. 1987) (affirming district court's determination that failure to pay arbitration fee to the American Arbitration Association rendered its initiation untimely, and distinguishing between an employer's "request for" arbitration in correspondence with the plan sponsor and actual "initiation of" arbitration); *Combs v. W. Coal Corp.*, 611 F. Supp. 917, 921 (D.D.C. 1985) ("This distinction between requesting arbitration and initiating arbitration is crucial . . . . Because defendant did not follow the rules or the initiation of arbitration [including the filing of a demand

with the American Arbitration Association and paying filing fees], it simply did not initiate arbitration.").  These cases illustrate that following the arbitration procedures established by the MPPAA and required by the prescribed arbitral forum is essential to an employer's claim of having initiated arbitration in order to challenge a withdrawal liability assessment.  Simply making it known to the plan sponsor that the employer would like to arbitrate is not enough to constitute and initiation of arbitration sufficient to prevent the liability amount from becoming "due and owing."

Defendant neither avers that it followed the terms of the Trust Agreement as to the initiation of arbitration nor cites any authority that supports its apparent claim that attempting to proceed before the Board was adequate despite being noncompliant with the Trust Agreement. The Court is thus hard-pressed, in light of the precedents described above, to find the existence of a genuine dispute of material fact as to whether Defendant initiated arbitration for the purposes of ERISA.  Indeed, there appears to be little distinction between an employer that, as in *B & B Lines*, failed to pay the arbitrator's filing fee, and Troy, which failed to initiate arbitration pursuant to its agreement with the Fund.  It is clear from the precedents described above that courts take seriously the procedural requirements of the arbitral forums chosen by the parties in withdrawal liability disputes, and that even rectifiable errors like the failure to pay a filing fee are not excused; Defendant's failure to proceed in the manner required by the PBGC and pursuit of arbitration of a forum completely of its own choosing appears no less problematic.  Further, courts are strict in their distinction between "requesting" and "initiating" arbitration, and this Court has been given no reason to deviate from this pattern.  Although it might be said that the Board's notice to Plaintiffs that Defendant sought to arbitrate before it was an indirect request for

arbitration, a proceeding contemplated by the amended Trust Agreement—one following PBGC procedures—was never initiated.

Further, Defendant has provided no legal basis for its argument that it is entitled to judgment because of the Fund's refusal to participate in the arbitration process before the Board. Although Defendant alleges generally that Plaintiffs have violated § 1401(a) (Doc. No. 36 at 9), the Court has been alerted to no statutory provision or case that would require the Court to enter judgment in Defendant's favor because Plaintiffs declined to arbitrate out of accordance with the Trust Agreement.

In light of this analysis, there exists no genuine dispute as to the fact that Defendant was required to initiate arbitration in order to contest Plaintiffs' withdrawal liability assessment, and that going to the Board and following its arbitration procedures failed to constitute an initiation of arbitration in satisfaction of § 1401(a).

### D. Defendant's Ability to Raise the Timing of Plaintiff's Notice of Liability as a Defense to this Action

Because the Court finds that Defendant failed to initiate arbitration pursuant to § 1401(a), the withdrawal liability amount assessed by the Fund became "due and owing." Defendant asserts in its defense, however, that Plaintiffs violated § 1399(b)(1) by failing to provide Defendant with notice of liability "as soon as practicable," and that the doctrine of laches also bars this suit. Plaintiffs address these arguments on their merits, but the Court must turn first to another point Plaintiffs assert: whether Defendant waived its ability to raise these defenses in this forum by failing to initiate arbitration.

In arguing that Defendant has waived these defenses, Plaintiffs cite the language of § 1401(a)(1), which states that disputes over the withdrawal liability assessment "shall be resolved through arbitration," and also a Sixth Circuit decision to the same effect, *CPT Holdings,*

*Inc. v. Indus. & Allied Emps. Union Pension Plan, Local 73*, 162 F.3d 405, 406 (6th Cir. 1998). In their argument that Defendant has waived its laches defense, specifically, Plaintiffs rely primarily on the Supreme Court's decision in *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of California, Inc.*, 522 U.S. 192 (1997). (Doc. No. 32 at 17-18; Doc. No. 41 at 3-4.) Plaintiffs also cite a number of other cases for the general proposition that the failure to arbitrate a dispute results in a waiver of defenses generally. (Doc. No. 41 at 4-5.)

In *Bay Area Laundry*, the Court determined chiefly that the six-year statute of limitations applicable to a cause of action for unpaid withdrawal liability runs from the employer's failure to make a scheduled payment, and that a separate cause of action arose from each missed payment with its own six-year statute of limitations. 522 U.S. at 202, 206. In so holding, the Court rejected the Ninth Circuit's concern that this rule put too much control of the statute of limitations in the hands of plaintiffs, remarking that this was a consequence of the flexible scheme Congress created with the "as soon as possible" standard for making the liability assessment, and emphasizing that pension funds nevertheless have an incentive to seek missing payments promptly. *Id.* at 204-05. Incidental to this analysis but important to this case, the Court then stated that "if an employer believes the trustees have failed to comply with their 'as soon as practicable' responsibility, *the employer may assert that violation as a laches objection at an arbitration* contesting the withdrawal liability assessment." *Id.* at 205 (emphasis added). This dicta not only suggests that arbitration is the proper forum in which to raise objections to a delay in the notice of liability and demand for payment, but also intimates that laches is not a separate defense to liability from a failure to provide notice "as soon as practicable" under the MPPAA, but instead is the proper means of making this argument.

*Bay Area Laundry* has been interpreted to stand for the proposition that a defense of laches must be addressed in arbitration as part of a challenge to withdrawal liability or else it is waived. In *Amalgamated Lithographers of America v. Unz & Co. Inc.*, the district court found that the defendant's failure to initiate arbitration resulted in a waiver of its "right to contest the amount owed or the adequacy of the notice [of liability]." 670 F. Supp. 2d 214, 226 (S.D.N.Y. 2009). The court further explained that "if laches is claimed as a defense to a claim for withdrawal liability, the issue must be arbitrated." *Id.* at 229 (citing *Bay Area Laundry*, 522 U.S. at 192). The *Unz* court further relied on decisions prior to *Bay Area Laundry* in which the timeliness of the notice of liability was deemed a matter for arbitration that might be waived if not raised in that forum. *See Giroux Bros. Transp., Inc. v. New England Teamsters & Trucking Indus. Pension Fund*, 73 F.3d 1, 4 (1st Cir. 1996) ("[A]ny dispute regarding the timeliness of the Fund's demand under § 1399(b)(1) is statutorily committed to arbitration in the first instance. . . . This is no less so because it may also involve a measure of statutory interpretation."); *Vaughn v. Sexton*, 975 F.2d 498, 502 (8th Cir. 1992) ("[B]y their failure to request arbitration [defendants] have waived [alleged failure to provide notice and demand for payment "as soon as practicable"] as a defense to payment."); *ILGWU Nat'l Retirement Fund v. Smart Modes of Cal., Inc.*, 735 F. Supp. 103, 107 (S.D.N.Y. 1990) (declining to address defense that demand for payment was not made "as soon as practicable" because this was a matter for arbitration, not the court).

The general proposition that waiver of defenses subject to arbitration occurs when an employer fails to initiate arbitration—not limited to the context of laches—has been found by courts within this Circuit and elsewhere. *See Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Palladium Equity Partners II-A, LP*, 722 F. Supp. 2d 854, 875 (E.D. Mich. 2010) ("Normally, the employer's failure to submit its dispute to arbitration results in a waiver of any

defenses to the imposition of withdrawal liability.") (citing § 1401(b)(1)); *W.G. Heating & Cooling*, 555 F. Supp. 2d at 853 ("The weight of appellate authority holds that an employer that fails to initiate arbitration in a timely manner waives defenses and objections that could have been raised in arbitration.") (citing *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. BES Servs., Inc.,* 469 F.3d 369, 376 (4th Cir. 2006); *Bd. of Trs. of Trucking Employees of N. Jersey Welfare Fund, Inc.-Pension Fund v. Kero Leasing Corp.,* 377 F.3d 288, 294 n.5 (3d Cir. 2004); *Cent. States, Se. & Sw. Areas Pension Fund v. Midwest Motor Express, Inc.,* 181 F.3d 799, 805 (7th Cir. 1999); *Mason & Dixon,* 852 F.2d at 166 n.11); *Trs. of Bldg. Laborers' Local 310 Pension Fund v. Able Contracting Grp., Inc.,* No. 1:06CV1925, 2007 WL 2238361, at *3-12 (N.D. Ohio Aug. 1, 2007); s*ee also Robbins v. Chipman Trucking, Inc.*, 866 F.2d 899, 902 (7th Cir. 1988) (affirming district court's determination that employer waived defenses by failing to initiate arbitration timely).

Indeed, even when the results of such a determination are harsh, respecting Congress' arbitration scheme has won out over employers' attempts to raise arbitrable defenses in the judicial forum without first arbitrating.  In *O'Conner v. DeBolt Transfer, Inc.*, a district court reviewed the uniformity of judicial opinion that Congress' arbitration scheme must be honored despite the potentially harsh result of waiving defenses, and then followed suit even in the face of equitable arguments that liability would be unfair due to the defendant's alleged ignorance of the implications of failing to arbitrate.  737 F. Supp. 1430, 1437-38 (W.D. Pa. 1990); s*ee also Robbins v. Admiral Merchs. Motor Freight, Inc.*, 846 F.2d 1054, 1056 (7th Cir. 1988) ("The resounding message [of § 1401] is that arbitration is the preferred method for resolving pension plan disputes and that failure to arbitrate will have adverse consequences.").

Defendant has not explicitly countered Plaintiffs' argument that the failure to arbitrate effects a waiver as to its timeliness defenses; at most on this point, Defendant has cited a limited number of cases in which courts themselves have dealt with the question of "as soon as practicable" or laches in order to show that the Fund's delay was unreasonably long. Presumably, Defendant might be making an implicit argument that the latter defenses have not been waived because they are the proper subject matter of judicial resolution, not arbitration, such that no waiver arose from the failure to raise them in an arbitral forum. The Court will address Defendant's argument as such.

First, while recognizing that the MPPAA does not define "as soon as practicable," Defendant points out *I.A.M. National Pension Fund Plan A, A Benefits, et al. v. Cullman Industries, Inc.,* 640 F. Supp. 1284, 1288 (D.D.C. 1986), in which a district court in the District of Columbia found that ten months' delay in providing notice did not violate the statute. (Doc. No. 36 at 2.) Defendant further notes that the seven years between Troy's complete withdrawal and the notice of withdrawal liability was longer than the six-year statute of limitations for filing an action, and asserts that reasonable minds could not differ that seven years is not "as soon as practicable," such that dismissal of the action is necessary. (*Id.* at 2-3.)

In its argument that laches bars the instant action, Defendant also cites *Combs*, *supra*, which held that that laches did not prevent an action to collect withdrawal liability brought one year after the plaintiffs allegedly knew of the defendant's liability (before going on to find that the failure to arbitrate prevented the employer from contesting the amount and existence of its liability). 611 F. Supp. at 920. Notably, *Combs* was decided one year prior to *Cullman Industries* by the same judge, and the latter holding relied in part on the fact that the court action had been commenced well within the six-year statute of limitations, which, according to the

court, began to run when knowledge of withdrawal liability arose—the view later rejected in *Bay Area Laundry* (in addition to that case's assertion that laches was a matter for arbitration). Defendant also cites a Tenth Circuit case, *In re Centric Corp.*, 901 F.2d 1514 (10th Cir. 1990), *cert. denied*, 498 U.S. 852 (1990), in which the court rejected an argument that laches was waived by the failure to submit this issue to arbitration, and then found that a delay of twenty months in re-bringing a claim to collect withdrawal liability that had been stayed pending bankruptcy proceedings. As to this final case, it is important to note, as two other courts have, that *In re Centric* did not consider a situation where the allegedly unfair delay was in the notice of liability, but instead the timing of the court action. *Vaughn*, 975 F.2d at 572; *Operating Engineers' Trust Fund v. Clark's Welding & Mach.*, 688 F. Supp. 2d 902, 909 (N.D. Cal. 2010). As noted previously, the Eighth Circuit's determination in *Vaughn*—that a failure to raise the "as soon as practicable" defense in arbitration resulted in waiver—supported the holding in *Unz* regarding the waiver of laches. In *Clark's Welding & Machine*, the district court also distinguished from *In re Centric Corp.* and also relied on *Vaughn* to hold that the defendants' failure to raise laches (as to the notice of liability) in arbitration resulted in the waiver of that defense.

Thus, while courts have adjudicated the issue of delay in the notice and demand for payment of withdrawal liability without prior arbitration, these cases appear to be rare and, frankly, somewhat outdated and otherwise uncompelling. It is clear to the undersigned that *In re Centric Corp.* addresses a situation quite different from that before the Court; while *Cullman* and *Combs* appear to be basically on point, they do not take into consideration either the developments of *Bay Area Laundry* or the precedents of this circuit regarding arbitrability and waiver in the context of the MPPAA.

Although courts within the Sixth Circuit have not addressed this issue extensively, *Mason & Dixon Tank Lines* made clear the supremacy of arbitration. The case also indicated that questions of statutory construction are not exempt from arbitration, and, instead, that only "narrow exceptions" exist to the requirement that challenges to the determinations made under §§ 1381 through 1399 must be arbitrated. 852 F.2d at 164. Those exceptions are when "an employer mounts a facial constitutional attack; makes a verifiable claim of irreparable injury; or raises the issue of whether it is an 'employer' within the meaning of ERISA section 4221(a)." *W.G. Heating & Cooling*, 555 F. Supp. 2d at 848 (citing *Mason & Dixon Tank Lines*, at 165). Defendant has neither invoked one of these three exceptions,[3] nor made a convincing argument that the analysis of its laches or "as soon as practicable" defenses—which are essentially the same, though the latter more an issue of statutory interpretation—should be performed in the judicial forum. The Court cannot find that the defenses raised are non-arbitrable, such that the failure to arbitrate would not effect a waiver of them in this forum.

The law reviewed in this section shows a strong tendency toward finding waiver of arbitrable defenses generally through the failure to raise them in arbitration within this Circuit and elsewhere, as well as indications from the Supreme Court and the lower courts that the employer's failure to raise defenses regarding a plan sponsor's delay in the notice of liability specifically results in waiver of such defenses. This Court declines to buck these trends on the arguments and facts presented here, and must find that defenses as to whether the notice of liability was provided "as soon as practicable" and the doctrine of laches have been waived by

_____

[3] Defendant has raised the potential detriment that Plaintiffs' success in this action would have on Troy's ability to continue operating, which might go to the issue of irreparable injury. Indeed, it does appear that having to pay the withdrawal liability assessed by the Fund might put the company's future in jeopardy. However, Defendant has not invoked this exception to the arbitration requirement or clearly requested any form of equitable relief (other than perhaps a footnote suggesting that if the Court does not find for Defendant on its motion, the Court should deny summary judgment to Plaintiffs and compel them to produce information regarding the liability assessment so it now may be challenged (Doc. No. 39 at 9, n.2)). Instead, Defendant seeks either to continue toward trial or to be awarded judgment.

the failure to initiate arbitration properly.[4]  As such, the withdrawal liability amount assessed by

Plaintiffs remains "due and owing," and they are entitled to the withdrawal liability amount as a

matter of law.

## IV. DAMAGES, FEES AND COSTS

Because Defendant has failed to challenge the withdrawal liability amount assessed by

Plaintiffs, and has also failed to make any payments pursuant to the schedule set by Plaintiffs,

Defendant is in default pursuant to § 1399(c)(5).  Thus, Plaintiffs are entitled to the $216,755.00

in withdrawal liability they have assessed against Defendant.

Section 1132(g)(2) also entitles Plaintiffs to interest on unpaid contributions, an amount

equal to the greater of that interest *or* liquidated damages up to twenty percent of the withdrawal

liability amount as provided for under the plan, and also reasonable attorney fees.  Plaintiff

claims that Defendant owes the Fund: interest on the withdrawal liability at the Federal Reserve

Fund's Discount Rate plus two percent on the day the delinquency occurred, sixty-one days after

the date Troy received its notice of default (October 21, 2009); and $43,355.00 in liquidated

damages, reflecting twenty percent of the withdrawal liability amount; and attorneys fees and

costs.  (Doc. No. 32 at 14-15.)  Defendant has not contested the validity of this request or the

applicability of the various plan documents Plaintiffs rely on regarding the rate of interest and

liquidated damages provisions (beyond suggesting that these agreements might be invalidated by

the defenses raised in Defendant's Motion (Doc. No. 37 at 2)).  Nor does the Court note any

basis for such a challenge after reviewing the plan documents submitted in support of Plaintiffs'

---

[4] Even if it were necessary to reach the merits of these defenses, the Court thinks it unlikely that it would be possible
to find in Defendant's favor on the facts presented.  Defendant has put forth no evidence beyond the sheer number of
years that have gone by to show that Plaintiffs did not provide notice of withdrawal liability "as soon as
practicable."  (Doc. No. 36 at 2-3.)  The Court is unaware of facts that would tend to prove that an earlier notice was
in fact "practicable" in this case.  Although, for the purpose of a laches assessment, Defendant has produced
evidence of prejudice to the company through the delayed notice of liability, Defendant still relies in conclusory
fashion only on the number of years gone by as to the "unreasonableness" of any delay.  (*Id.* at 3-5.)

Motion (*see* Doc. No. 30), which appear to be valid, enforceable, and accurately reflected in Plaintiffs' discussion of their entitlement to damages.

Plaintiffs provided the Court an interest calculation through October 31 of 2010, which Defendant did not challenge. (Doc. No. 30 ¶ 13.) Plaintiffs are hereby **ORDERED** to provide the Court with an updated interest calculation within ten days of the entry of this Order, including an amount due through the date of the calculation's submission and an amount to be added per each subsequent day for twenty days pending the entry of judgment. Plaintiffs must indicate whether this new calculation impacts their ability to collect liquidated damages pursuant to § 1132(g)(2) and to provide a final total calculation of their entitlement to unpaid withdrawal liability, interest, and liquidated damages. Upon receipt and consideration of this information, the Court will enter judgment consistent with the rulings contained herein and its assessment of the new calculations.

Plaintiffs may also move for attorney fees and costs within thirty days of the entry of judgment. *See* Fed. R. Civ. P. 54; L.R. 54.01.

## V. CONCLUSION

For the reasons stated above, Plaintiff's Motion is **GRANTED in part** as to the existence of liability and entitlement to damages and Defendant's Motion is **DENIED**. The entry of judgment regarding the total amount of liability (save fees and costs) will follow pending the Court's receipt and review of the updated interest calculation.

It is so ORDERED.

Entered this the 2nd day of August, 2011.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT